**UNITED STATES of America,
Plaintiff,**

v.

**Grant FOSTER et al., Defendants.**

**Civ. No. 6534.**

District Court, Canal Zone,
Division Balboa.

Sept. 5, 1968.

As Amended Oct. 3, 1968.

Rowland K. Hazard, U. S. Atty., Balboa, Canal Zone, John J. McCarthy, Gen. Litigation Section, Mitchell Rogovin, Asst. Atty. Gen., Tax Div., Dept. of Justice, Washington, D. C., for plaintiff.

George Cochran Doub, Weinberg & Green, Baltimore, Md., for defendants Grant Foster, Foster Const. (Panama), S. A., Zeb Ward, Jr., James A. McAvoy, James J. Plaia, William C. Castleberry, Vincent Oglesby, and Paul R. Cheesman.

De Castro & Robles, Balboa, Canal Zone, for defendants Manuel Arias, Roberto Novey, Miguel J. Moreno, Jr., and Ramon Arias.

FINDINGS OF FACT AND CONCLUSIONS OF LAW
AND
ORDER APPOINTING A RECEIVER

CROWE, District Judge.

The plaintiff having appeared and filed its verified complaint together with an affidavit herein for the foreclosure of its federal tax liens outstanding against the defendants Grant Foster and Barbara Dunn Foster, and the plaintiff having prayed for the appointment of a receiver to take custody of the assets in the Canal Zone of Foster Construction (Panama), S. A., and the appointment of such a receiver having come on for hearing on June 19, 1968, before this Court, and the Court having considered the

pleadings, affidavit, and papers filed herein, does specifically find and state its findings of fact and conclusions of law, as follows:

## FINDINGS OF FACT

1. The defendant Foster Construction (Panama), S. A., is indebted to the defendant taxpayer, Grant Foster, in the amount of $576,371.88, on which no interest is accruing; and said company is presently unable to pay this obligation without ceasing its operations and liquidating its assets.

2. The plaintiff United States of America has valid tax liens outstanding against Grant Foster and Barbara Dunn Foster which secure outstanding federal income tax assessments in excess of One Million Dollars; and these tax liens encumber Grant Foster's claims of $576,-371.88 against Foster Construction (Panama), S. A. Since the Court of Appeals for the Fourth Circuit has affirmed these tax liabilities in an amount in excess of One Million Dollars (although time for certiorari has not expired) there is a very substantial probability that a very large tax liability exists.

3. The defendant Grant Foster has been convicted of federal income tax evasion with respect to some of the tax years underlying the tax claims asserted in this suit.

4. The United States Government has heretofore been unable to discover any assets in the United States which could be reached to satisfy the aforementioned tax liabilities, despite the extensive efforts to discover any such assets. Further it appears that Grant Foster became aware of the United States proposed tax claims in 1958, when he sought to quash administrative summons served upon banks and which called upon the banks to produce certain financial records of the taxpayer. Thereafter a number of assets identified in the Tax Court's opinion as being located in the United States were either removed from the United States or sold with the proceeds being apparently removed from the United States, to the detriment of the collection of the instant tax claims.

5. As found by the Tax Court, the taxpayer Grant Foster organized a Venezuelan corporation and construction company known as Foster Construction, C. A., and Grant Foster was the source of all policy decisions affecting that company, and was himself in charge of all construction work, financial arrangements, hiring of personnel, purchase of equipment, and procuring of contracts. Although the shares of stock of that company were alleged to be owned by various third persons, the stock of this company was found to be owned by Grant Foster and held by nominees for him.

6. After formation of the Venezuelan corporation, Grant Foster caused to be organized Foster Construction (Costa Rica) S. A.; and the financing, organization and management of this company was also carried out by Grant Foster. The equipment and financing of this company appear to have been effected by a transfer of assets and equipment from the Venezuelan company to the Costa Rican company.

7. Thereafter, there was incorporated in Panama the company known as Foster Construction (Panama), S. A., and the initial equipment and financing of this company was obtained by transferring the assets and liabilities of the Costa Rican company to the newly formed Panamanian company.

8. It appears that all three companies [Foster Construction, C. A., Foster Construction (Costa Rica), S. A., and Foster Construction (Panama), S. A.] have been under the sole domination and control of Grant Foster up to June 1968; and any control and domination of Foster Construction (Panama), S. A., which may have been relinquished in June, 1968, as per defendants' allegations was only done so after investigations were made into this control earlier in 1968 by the Internal Revenue Service. The control over Foster Construction (Panama), S. A., was exercised by Grant Foster through his ability to demand payments of the $576,371.88 and through his right

to vote all the stock of the company and manage the company through a voting trust agreement executed in 1965.

9. The debt of $576,371.88 of Foster Construction (Panama), S. A. to Grant Foster was created by advances by Grant Foster to Foster Construction (Costa Rica), S. A., from 1956 to 1964 and earlier to the company called Foster Construction C. A. of Venezuela.

10. Foster Construction (Panama), S. A. claims that it does not have to pay this debt of $576,371.88 because it executed a note for this amount on October 17, 1966, calling for no interest, and not maturing until 1972. It appears that during 1966 at the time of the execution of the note and up to June 1, 1968 the taxpayer exercised complete control over the company's affairs by the right to vote 100% of the company stock through a voting trust agreement dated May 18, 1965 given to secure the aforementioned indebtedness and through his position as president of the company, and of course he could still exercise this control after execution of the note so as to cancel the note.

11. The president of Foster Construction (Panama), S. A., testified on June 19, 1968 that he had previously advised a Government Revenue Agent that this note was maintained at the company office with the other company papers; later there was testimony that the note was maintained in a locked file to which only the taxpayer had access; at first this note was represented as being in the courtroom on June 19, 1968 but later it could not be located. Accordingly, there is a substantial question as to whether this note was in fact delivered to the taxpayer.

12. There was testimony that the alleged note was executed in response to a letter by a stockholder allegedly holding twenty-seven shares of stock out of an alleged 100 shares outstanding, wherein the stockholder requested Grant Foster, as President of the company, to execute a note deferring the date of payment because the company would be bankrupted

if Grant Foster became bankrupt. The date of this letter is October 11, 1966, the alleged date of the alleged note is October 17, 1966 and the date of the Tax Court decision fixing the aforementioned tax liability of Grant Foster of over One Million Dollars is September 9, 1966. The Government contends that this note was executed for the purpose of preventing the Government from collecting the involved tax claim from the taxpayer's claim against Foster Construction (Panama), S. A.

13. Further it appears that substantially all of the income of the Foster Construction (Panama), S. A. is presently earned from sources in the Canal Zone, although the company has in the past moved some construction equipment out of Panama and transferred possession of it to another company with a base of operations in Switzerland; further the company admitted that it is investigating possible contracts to be performed by it in Honduras.

14. It also appears that the taxpayer, Grant Foster, was President of Foster Construction (Panama), S. A. until June of 1968, and that he did not relinquish this position until after the Fourth Circuit opinion affirming his tax liabilities and federal tax authorities began investigating Grant Foster's relationship with Foster Construction (Panama), S. A.

15. Foster Construction (Panama), S. A. maintains two bank accounts, one in the Canal Zone from which it pays all current expenses such as payrolls, and one in the Republic of Panama, which it uses to build up a line of bank credit and in which it deposits its funds which are not to be applied toward payment of current expenses in the near future. Prior to June, 1968, Grant Foster was a joint signatory on both of these accounts, but on or about June 1, 1968, after federal tax authorities began investigating Grant Foster's relationship to Foster Construction (Panama), S. A. his name was removed from the account in the Canal Zone; however, as of June 19, 1968, he was still a joint signatory on the bank account maintained in the Re-

public of Panama. Further the bank account maintained in the Republic of Panama increased from approximately $60,000 on June 1, 1968 to approximately $160,000 on June 19, 1968.

16. The property of Foster Construction (Panama), S. A. consists of movable construction equipment which can be moved out of the Canal Zone and into the Republic of Panama without an inordinate amount of trouble; and if this property is so removed, collection of the aforementioned tax liabilities from Grant Foster's claim against Foster Construction (Panama), S. A., would be *pro tanto* defeated. Further, in view of Grant Foster's past absolute control of the company and its business up to June 1, 1968, and in view of his actions in the past in fraudulently evading payment of taxes, there is a substantial probability that removal of the property of Foster Construction (Panama), S. A., from the Canal Zone to the Republic of Panama would occur in the future. Further this property appears to be worth at least $500,000.

17. The Commissioner of Internal Revenue has certified pursuant to Section 7403(d) of the Internal Revenue Code of 1954 that it is in the public interest that a receiver be appointed for Foster Construction (Panama), S. A.

18. Although stock has been issued to various third persons with respect to Foster Construction (Panama), S. A., a substantive portion of this stock allegedly represents bonuses to long established employees of the companies organized by Grant Foster, and with respect to the rest of the stock which was allegedly purchased, the purchase price was recovered within one or two years through alleged cash dividends. Accordingly this stock has not contributed significantly to the financing of Foster Construction (Panama), S. A., but rather this company has been financed by loans from Grant Foster and transfers of assets from the Costa Rican and Venezuelan companies which were dominated by Grant Foster.

19. The appointment of a receiver for Foster Corporation (Panama), S. A., will not cause undue harm to the said company, but will enable said company to continue operations within the Canal Zone at least as profitably as it is presently doing and will preserve the said company as a going concern, and at the same time the claims of the United States will be protected.

20. There is a substantial probability that the United States will establish a large tax claim against Grant Foster and will be entitled to immediate collection of the claim of $576,371.88 and will be entitled to pierce the corporate veil so as to set aside the stock heretofore issued to third persons with respect to said company, and, after payment of the creditors of said company, to apply the equity in said company toward satisfaction of Grant Foster's taxes; and with respect to all of these issues the Plaintiff has established a prima facie case.

21. There is no other practical or feasible method of protecting the plaintiff's claim in the instant case other than by the appointment of a receiver to take custody of the business and assets of Foster Construction (Panama), S. A., in the Canal Zone.

## CONCLUSIONS OF LAW

1. This Court has personal jurisdiction over the defendants, Foster Construction (Panama), S. A., Manuel Arias, Ramon Arias, Roberto Novey, Miguel J. Moreno, Jr., Mariano Anderson, Zeb Ward, Jr., James A. McAvoy, William C. Castleberry, Vincent Oglesby and Grant Foster, as all of said defendants have been personally served within the territorial boundaries of the Canal Zone.

2. Further this Court has jurisdiction over the subject matter of the cause of action alleged in the Government's complaint which is to foreclose federal tax lien and to set aside certain transactions which are alleged to fraudulently hinder the enforcement of the said federal tax lien. Further this cause of action is one historically recognized as lying within the jurisdiction of courts of equity.

■ 3. Under the Canal Zone Code this Court is authorized to appoint a receiver in accordance with the usages of courts of equity, and courts of equity have in situations analogous to the instant one appointed receivers to preserve the status quo in actions to enforce and foreclose federal tax liens.

■ 4. The plaintiff is entitled to the appointment of a receiver to enforce its lien and take custody of the assets in the Canal Zone of Foster Construction (Panama), S. A., as prayed for in the complaint so as to conserve said assets and protect the value of the plaintiff's claims in said assets during the pendency of this suit.